CROOK ET AL., PARTNERS, D. B. A. CROOK SON & CO., *v.*
BALTIMORE & OHIO RD. CO.
(Two Cases.)

(Decided January 14, 1929.)

*Messrs. Hightower, O'Brien & Porter,* for plain-
tiffs in error.

*Messrs. Harmon, Colston, Goldsmith & Hoadly,*
for defendant in error.

HAMILTON, P. J. These two cases are here on error to the court of common pleas of Hamilton county, Ohio, and, on motion, were consolidated, both raising the same question of law. The question before the court is complicated by the procedure, and the separate findings of fact and conclusions of law, as found by the common pleas court.

The cases seem to have been tried on a proposition entirely different from that presented in the pleadings. The oral arguments and the briefs of counsel present a different question from that presented in the pleadings. In this situation, we find it necessary to go to the pleadings to ascertain the issue, and to then determine whether or not the judgment of the trial court was correct, notwithstanding the procedure taken. To present the proposition suggested, we find it necessary to state the substance of the pleadings which present the issue. The pertinent part of the amended petition is as follows:

"Plaintiffs say that there is due them from the defendant the sum of thirteen hundred eighteen dollars and fifty-seven cents ($1,318.57) for an over-charge in freight rates collected by said defendant on certain shipments of logs * * * as shown by statement hereto annexed, marked 'Exhibit A' and made a part hereof; that said overcharge arose by reason of the application of said defendant of a rate based on what is known as 'sixth class' as set out in Agent Jones' Tariffs 219 and 231 on file with the Public Utilities Commission of Ohio; that this classification and rate used by said defendant is and was unjust, unreasonable, discriminatory, and unduly prejudicial, in that the rate employed was the same as that for lumber, whereas the liability is not nearly so great with logs as with lumber; * * *

that said claim for overcharge was duly filed by the plaintiffs with the Public Utilities Commission of Ohio on its informal docket on April 29, 1924, and said commission assigned to said claim its No. RS-10689; that said claim was so filed to stay the running of the statute of limitations.''

This fully states the cause of action. Other allegations are not material to the determination of the question. There was no demurrer filed to the petition, nor was the jurisdiction of the court challenged in any way.

To this petition the defendant answered in substance as follows:

''Defendant denies that there is due to the plaintiffs from it the sum of $1,318.57 or any other sum, for overcharge in freight as averred in the amended petition. It denies that there has been any such overcharge in the freight. It admits that plaintiffs made the shipments mentioned in the amended petition and that the rates charged thereon were as stated in said amended petition. It avers that the freight rates charged upon said shipments were the rates fixed in the tariffs filed by this defendant with the Public Utilities Commission of Ohio, and duly published as required by law, and it denies that said rates are or were unjust, unreasonable, discriminatory, or unduly prejudicial as averred in the amended petition or otherwise.

''It admits that the Interstate Commerce Commission has ordered interstate rates on logs to be reduced, and it admits that plaintiffs filed their claim for overcharge with the Public Utilities Commission of Ohio, as averred in the amended petition.''

No reply was filed to the answer. It is therefore conceded that the freight rates charged, including those sued upon in this action, were lawful rates under the statute.

Had a motion for judgment on the pleadings been filed by the defendant railroad company, the court would or should have sustained such a motion. But no such motion was made, and the case was tried on the facts to the court, the parties waiving a jury. The court, upon request, made separate findings of fact and conclusions of law.

The court made its separate findings of fact and conclusions of law apparently upon the proposition that there was before it a suit for reparation, and not a suit for an overcharge of freight rates, and the action seems to have proceeded on the theory that this was the case before the court. However, on the issue made by the pleadings, it was clearly an action to recover for an overcharge.

The Supreme Court of Ohio, in the case of *Taylor-Williams Co.* v. *Public Utilities Commission*, 97 Ohio St., 224, 230, 119 N. E., 459, defines an "overcharge" as a term meaning a charge collected above a lawful tariff rate; a charge of more than is permitted by law.

An action for reparations, as we understand it, is where there has been a charge of freight rates within the limits permitted by law, but which, notwithstanding that fact, is unreasonable and excessive. The allegations of the petition can be construed to mean nothing more or less than that the defendant overcharged the plaintiffs, and that that overcharge arose by reason of the improper classification of logs with finished lumber. The answer is

that the defendant was lawfully entitled to charge
that rate, based on that classification, by virtue of
the legal rates as provided in its tariff schedule,
and on file with the Public Utilities Commission of
Ohio.

As heretofore stated, there being no reply to the
answer denying the fact of the legality of the tariff
charge, defendant would have been entitled to judg-
ment on the pleadings. However, without objection,
the evidence was submitted to the court, and amply
sustains the fact that the freight charge, which in-
cludes that sued for in this action, was a lawful
rate, and there was, therefore, no overcharge. On
that issue the plaintiffs have failed in the proof.
The judgment of the trial court was therefore cor-
rect, although given on other grounds, as disclosed
by the separate findings of fact and law.

In passing, will state that, if there had been evi-
dence of an overcharge, the plaintiffs have not
brought themselves within the law, entitling them
to maintain the action. That procedure is provided
for in Section 579, General Code, which requires a
finding of the commission, and a certification of its
findings to the clerk of the court of common pleas,
as a basis for the jurisdiction of the common pleas
court to hear and determine the question.

If the question of reparations was before us, we
are of opinion that the plaintiffs could not maintain
the action. They could not confer jurisdiction on
the court, since the jurisdiction goes to the subject-
matter of the action.

The trial court, in its separate findings of fact and
conclusions of law, found that: ''It is entitled to
entertain jurisdiction of claims of this nature, where

reparation of freight rates is sought, and does assume, in these cases, jurisdiction of the same; and, secondly, that on the facts adduced, plaintiffs are not entitled to recover the amount prayed for in their petition, or any amount whatsoever, for the reason that there has been no showing that more than the tariff rate was collected.''

This statement of the trial court in its conclusions of law indicates the confusion in the case in that court. When the court found as its conclusions of law that there had been no showing that more than the tariff rate was collected, it would indicate that the court had in mind an overcharge. When the court found it was entitled to entertain jurisdiction on the question of reparation, a very different situation arose. If the court in its conclusions of law was deciding the case on the question of reparation, and was correct in finding it was entitled to entertain jurisdiction of the action, then, upon its finding of fact, the judgment was erroneous, since there is ample evidence, as disclosed by the record, as well as by the separate findings of fact, that an unreasonable and discriminatory rate was charged plaintiffs.

However, as we have heretofore stated, the issue being one of overcharge, the judgment will be affirmed. Were the question of reparations properly here, we would incline to the view that such an action could not be maintained under our laws. Section 510, General Code, provides:

''No railroad shall charge, demand, collect or receive a greater or less compensation for the transportation of passengers or property, or for any service in connection therewith, than is specified in such printed schedules, including schedules of joint

rates, as being then in force. The rates, fares and charges named therein shall be the lawful rates, fares and charges until they are changed as provided in this chapter.''

Here we have the direct statutory regulation that no railroad shall charge a greater or less compensation, etc. A proceeding of the kind suggested here, designated "reparation," would be but the indirect compelling of the railroad to charge a less compensation for transportation than permitted by law, and would require the defendant to indirectly violate the provisions of Section 510, General Code.

It is argued in the brief that if this construction be placed upon Section 510, it would violate Section 16 of the Bill of Rights, which provides: ''All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, * * *.'' The answer to this is that upon the filing of the schedule of rates with the Public Utilities Commission, any shipper can immediately file complaint, and, if not satisfied with the finding of the Commission, the right is reserved to prosecute error direct to the Supreme Court of Ohio. The fact that this might require vigilance and promptness on the part of the shipper to protect his rights, would not make the law unconstitutional, since his day in court is provided for.

Our conclusion is that the judgment of the court of common pleas should be affirmed, but for different reasons from those found by the trial court, as herein indicated.

*Judgment affirmed.*

CUSHING and ROSS, JJ., concur.